Pamela A. HAINES, Appellant,

v.

BELLSOUTH TELECOMMUNICA-TIONS, INC.; Jeanette Gill; and David Parker, Appellees.

No. 2002–CA–000033–MR.

Court of Appeals of Kentucky.

April 23, 2004.

William R. Kenealy, Louisville, KY, for appellant.

Dorothy J. Chambers, Cheryl R. Winn, Louisville, KY, for appellees.

Before COMBS, DYCHE and JOHNSON, Judges.

### OPINION

JOHNSON, Judge.

Pamela A. Haines has appealed from an order of the Jefferson Circuit Court entered on November 29, 2001, which granted the appellees' motion for summary judgment. Having concluded that there was no genuine issue as to any material fact and that BellSouth Telecommunications, Inc., Jeanette Gill, and David Parker were entitled to judgment as a matter of law, we affirm.

Haines was and is employed by Bell-South in Louisville, Kentucky, where she has worked primarily as a service representative since approximately 1978. Gill and Parker were both supervisors at Bell-South. On or around December 1, 1999, Haines was walking down a hallway at work when she saw Parker approaching her from the opposite direction. Parker was carrying a boat horn in his hand, which was being used by BellSouth as part of a "kickoff" to a new company program. According to the record, the horn was periodically sounded to provide motivation for BellSouth's employees, and to help provide a more exciting atmosphere in the workplace.

According to Haines's deposition testimony, she turned around and followed Parker down the hallway in order to sign a book indicating the time that she was leaving to go on break. As Haines followed Parker down the hallway, Parker turned right and proceeded down another hallway toward the break room. After signing the book, Haines walked back toward the hallway that Parker had entered.

As Haines was turning left into the same hallway Parker had entered, Parker, who was standing immediately around the corner, sounded the boat horn. Both Parker and Haines testified that they did not see each other in the moments immediately preceding the sounding of the boat horn. Haines testified that she was standing approximately one foot away from the horn when it was sounded.[1] As a result of this incident, Haines suffered serious hearing loss and permanent nerve damage, and has been forced to wear hearing aids and take various medications.

On May 15, 2000, Haines filed a complaint in the Jefferson Circuit Court, naming BellSouth, Gill, and Parker as defendants. According to Haines, "Parker's activation of the boat horn was an unprovoked act of physical aggression against [Haines], a fellow employee," for which he

---

1. According to testimony from both Parker and Haines, Parker was holding the horn at arm's length away from him when he sounded the horn. Parker testified that the nozzle of the horn was pointed down toward the ground when he sounded the horn.

should be held liable. Haines further claimed that BellSouth and Gill should be held liable for directing Parker to sound the boat horn, and that BellSouth should be held vicariously liable for the conduct of Gill and Parker. Haines sought damages for her physical injuries, medical expenses, and diminished earning capacity.

On June 6, 2000, BellSouth, Gill, and Parker filed an answer to Haines's complaint. Among the defenses asserted in their answer was that Kentucky's workers' compensation statutes provided Haines's exclusive remedy,[2] and that the named defendants were therefore immune from liability in Haines's civil suit. On September 4, 2001, BellSouth, Gill, and Parker filed a motion for summary judgment, once again arguing that workers' compensation provided Haines's exclusive remedy for her injuries. On November 29, 2001, the trial court entered an order granting the motion for summary judgment. This appeal followed.

■■■ Summary judgment is only proper "where the movant shows that the adverse party could not prevail under any circumstances."[3] The trial court is required to view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor."[4] However, "a party opposing a properly supported summary judgment motion cannot defeat that motion without presenting at least some affirmative evidence demonstrating that there is a genuine issue of material fact requiring trial."[5] As this Court has previously stated, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. There is no requirement that the appellate court defer to the trial court since factual findings are not at issue" [citations omitted].[6]

■■■ Haines first claims that there is a genuine issue as to a material fact which should have precluded the entry of summary judgment in favor of Parker. Specifically, Haines argues:

> In this case, when the trial court granted summary judgment, a question of fact remained whether Parker's actions constituted "horseplay" or [a] willful and unprovoked act of physical aggression.... A reasonable jury could find that Parker's actions were either intentional or, at the least, "horseplay," [which would] preclude fellow employee immunity.

We disagree and hold that there was no genuine issue as to any material fact and that Parker was entitled to judgment as a matter of law.

■■■ As a general rule under KRS[7] 342.690(1), an injured worker may not

---

**2.** It is not disputed that BellSouth provided workers' compensation coverage to its employees and that Haines was included under this coverage. Indeed, Haines testified that in addition to paying for all of her medical bills, BellSouth's workers' compensation carrier paid Haines temporary total disability benefits for the time she was forced to miss work.

**3.** *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991) (citing *Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985)).

**4.** *Steelvest, supra,* (citing *Dossett v. New York Mining and Manufacturing Co.*, Ky., 451 S.W.2d 843 (1970)).

**5.** *Hubble v. Johnson*, Ky., 841 S.W.2d 169, 171 (1992)(citing *Steelvest, supra,* at 480).

**6.** *Scifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996).

**7.** Kentucky Revised Statutes.

maintain an action at law against a fellow employee, unless the fellow employee, *i.e.*, the alleged tortfeasor, committed a "willful and unprovoked [act of] physical aggression" against the injured worker.[8] In *Kearns v. Brown*,[9] this Court discussed the immunity provided to fellow employees under KRS 342.690(1):

> It seems to be the general rule that compensation is not recoverable for injuries sustained through horseplay, done independently of and unconnected with the work of employment. . . .

> We conclude that the immunity provisions of KRS 342.690 are not applicable to a fellow employee whose actions are so far removed from those which would ordinarily be anticipated by the employer that it can be said that the employee causing the injury has removed himself from the course of his employment or that the injury did not arise out of the employment.

Hence, the key factual issue in determining whether the immunity provided under KRS 342.690(1) applies is whether the fellow employee's act falls within the scope of his employment.[10] When resolving this factual issue, the fellow employee's intent in committing the act in question must also be taken into account.

In the case *sub judice*, it is not disputed that when Haines was injured, Parker sounded the boat horn as part of the "course of his employment" with Bell-South. Haines, Gill, and Parker all testified that the use of boat horns in the workplace was part of an overall plan to motivate employees and to provide for a more fun and exciting environment in the office. Thus, Parker was acting within the scope of his employment when he sounded the horn on the date Haines was injured. However, that is not the end of the inquiry.

■ An act which would ordinarily be considered to be within the scope of employment may be deemed to be "horseplay," or outside the scope of employment, if it is committed with improper intent. For example, although the act of sounding the horn was within the scope of Parker's employment in a general sense, if Parker approached Haines and intentionally sounded the horn directly in her ear, it could fairly be said that his actions were "so far removed from those which would ordinarily be anticipated by the employer," that Parker had "removed himself from the course of his employment."

Under the facts of the case at bar, however, Haines has failed to offer any evidence of such an ill intent or motive on

**8.** KRS 342.690(1) states in pertinent part as follows:

> (1) If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. . . . The exemption from liability given an employer by this section shall also extend to such employer's carrier and to all employees, officers or directors of such employer or carrier, provided the exemption from

> liability given an employee, officer or director or an employer or carrier shall not apply in any case where the injury or death is proximately caused by the willful and unprovoked physical aggression of such employee, officer or director.

**9.** Ky.App., 627 S.W.2d 589, 591 (1982).

**10.** *See also Russell v. Able*, Ky.App., 931 S.W.2d 460 (1996)(stating that if on remand, the trial court determined that a teacher's "kneeing" of another teacher in the back of her leg was outside the scope of employment, the immunity provided under KRS 342.690(1) would not apply and a common law tort action could go forward).

Parker's part. Haines admitted in her deposition testimony that she has no evidence indicating that Parker sounded the horn while knowing that Haines was nearby and could be injured from the noise. Both Haines and Parker testified that they did not see each other immediately prior to Parker's sounding of the horn. Thus, since Parker's activation of the boat horn "arose out of his employment," he was entitled to the immunity provided under KRS 342.690(1).[11] Accordingly, with respect to Parker's assertion of the immunity provided under KRS 342.690(1), there was no genuine issue as to any material fact and Parker was entitled to a judgment as a matter of law.

Haines next claims that there were genuine issues of material fact which precluded the entry of summary judgment in favor of BellSouth and Gill. Specifically, Haines argues that there are questions of fact regarding whether BellSouth and Gill "ratified" the alleged "willful and unprovoked act of physical aggression" by Parker. Haines alleges that if BellSouth and Gill "ratified" Parker's conduct, they are liable as "joint participants."[12] Assuming, *arguendo*, that this ratification doctrine has a foundation in Kentucky law, we find Haines's argument to be unpersuasive.

Haines's claim that BellSouth and Gill should be held liable as joint participants is dependent upon a finding that Parker did indeed commit a "willful and unprovoked [act of] physical aggression" against Haines. As we mentioned above, Haines has admitted that she has no evidence which would support such a finding. Accordingly, with respect to the claims against BellSouth and Gill, there were no genuine issues of material fact and they were entitled to a judgment as a matter of law.

Based on the foregoing, the order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

---

11. While Haines appears to argue that Parker's action in sounding the horn was outside the scope of his employment when she states that "[i]t cannot be conceived as mere coincidence that Parker sounded the horn when Haines was walking in such close proximity[,]" Haines has nevertheless admitted that she has no evidence to support such a finding.

12. In support of this argument, Haines relies on *Iverson v. Atlas Pacific Engineering*, 143 Cal.App.3d 219, 228, 191 Cal.Rptr. 696 (Cal. App.1983). In *Iverson*, the California Court of Appeals held that an employer could be held liable in an action at law as a "joint participant" if it was found that the employer "failed to 'criticize, censure, terminate, suspend or otherwise sanction or take any action'" against an employee after being informed of that employee's tortious conduct. Obviously, in order for an employer to ratify an employee's wrongful conduct, the employee must first engage in wrongful conduct.