RECEVEUR CONSTRUCTION
COMPANY/REALM, INC.
Appellant,

v.

Linda ROGERS, Widow of Gary Rogers;
Hon. Richard H. Campbell, Jr., Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 97–SC–131–WC.

Supreme Court of Kentucky.

Dec. 18, 1997.

William P. Swain, Peter J. Glauber, Boehl, Stopher & Graves, Louisville, for Appellant.

John D. Bertram, Bertram & Cox, Campbellsville, for Appellee.

### OPINION OF THE COURT

This matter is before the Court as an appeal by the employer from an opinion of the Court of Appeals affirming the decision of the Workers' Compensation Board (Board). The Board's opinion upheld the Administrative Law Judge's (ALJ's) finding that Rogers' death was work-related and, therefore, that an award of survivor's benefits to the widow was warranted.

The issue herein concerns whether the worker's death occurred during the course and scope of his employment, and requires application of the "going and coming" rule and its exceptions.

The record reflects that the employer's business office was located in Louisville, Kentucky; whereas Rogers' residence was in Campbellsville, Kentucky. Further, it appears that Rogers had been employed by the subject employer, in different capacities, for approximately 13 years. As a result of his newly acquired promotion to project superintendent, Rogers was issued a company truck which contained a walkie-talkie style CB radio which allowed him to communicate with the office during the business day at distances of 30–35 miles. The employer concedes that it provided the truck to Rogers as a work vehicle to be used during the course of the workday, and as a means of direct transportation between his home and the job site. In addition, Rogers was issued a credit card to cover the fuel purchases for the company truck, as well as to cover the gasoline costs for his own vehicle when it was used for company business. Moreover, although he was not compensated for his travel

time to and from work, he was paid for any travel time between the office and the job site.

On March 23, 1993, Rogers, according to the employer's instructions, worked with co-employee Cornett at a job site in Clarksville, Indiana, from 8:00 p.m. that evening until 4:00 a.m. the next morning. The testimony indicates that after the co-workers left the job site in the company-issued truck, they went to the employer's office in Louisville to unload a truckload of rubbish. Thereafter, Cornett got into his own vehicle and proceeded home; whereas, Rogers, while still driving the company truck, was involved in a fatal automobile accident while en route to his home.

James A. Williams, Jr., the company's project manager, testified that use of a company truck was considered a "perk;" however, he also stated that Roger's "project required a truck" and the fact that Rogers' resided in Campbellsville was not the reason for the issuance of the vehicle. Further, he related that the truck was intended to be used as a work vehicle, as well as direct transportation between Rogers' home and the job site so that Rogers would not be required to first stop at the employer's business office.

The ALJ cited two authorities for finding that Rogers' death was work-related. First, he found that the case of *Turner Day & Woolworth Handle Co. v. Pennington*, 250 Ky. 433, 63 S.W.2d 490 (1933), governed the claim herein. Further, referring to an opinion rendered by a former ALJ in a somewhat similar case, he found that Rogers was an "essential person" with regard to the employer, and, thus, that his death was work-related and compensable as an exception to the going and coming rule.

Although disagreeing with the ALJ's "essential person" exception to the going and coming rule, the Board upheld the ALJ's conclusion as supported by substantial evidence based on the rationale in *Pennington, supra,* and *Larson's Workmen's Compensation Law, Desk Edition,* § 16.31. Specifically, the Board stated:

> *Larson's,* recognizes that in the majority of jurisdictions, the provision of an automobile under the employee's control by the

employer will result in journeys taken in that vehicle being held to be in the course of employment. See, *Larson's, Workmen's Compensation Law, Desk Edition,* Section 16.31. *Larson* refers us to various cases from other jurisdictions indicating that when the employer makes a substantial payment toward the expense of travel or provides a company owned vehicle for its employees, an exception is created to the going-and-coming rule.

While not prepared to totally adopt the reasoning in those cases, we do agree that where there is evidence that the use of the company owned vehicle is of some benefit to the employer, an exception to the going-and-coming rule is created. In our opinion, that is the effect of the Court's opinion in *Turner Day, supra.*

In the instant case, James A. Williams Jr., although testifying that the provision of the truck was a "bonus" or a perk for superintendents, stated that it was a means of direct transportation to the project and that the truck was used as a work truck during working hours at the project site and that it was helpful for the superintendent to have a truck so he could go directly from home to the project rather than driving his car to Receveur's office and then the truck from the office to the site. Later, in responding to a question as to whether the fact that Rogers lived in Campbellsville was a consideration in giving him a vehicle, Williams responded, "No, his project required a truck."

Therefore, in our opinion, although the ALJ determined Rogers' death was work related for the wrong reason, the facts in this claim are not in dispute, and in our opinion, the law, as enunciated by the Court in *Turner Day, supra,* brings this claim under the general exception to the going-and-coming rule referred to as the service to the employer doctrine.

Likewise, the Court of Appeals affirmed the Board.

The employer appeals and continues to argue that Rogers' death was not work-related as: (1) the situation herein does not fit within any of the recognized exceptions to

the going and coming rule, (2) the case of *Pennington, supra*, is distinguishable, and (3) Rogers was not providing any special service to the employer at the time of his death, Rogers was not being compensated for his travel time, and Rogers was on a purely personal mission when the accident occurred.

The general rule is that injuries sustained by workers when they are going to or returning from the place where they regularly perform the duties connected with their employment are not deemed to arise out of and in the course of the employment as the hazards ordinarily encountered in such journeys are not incident to the employer's business. *See Kaycee Coal Co. v. Short*, Ky., 450 S.W.2d 262 (1970). However, this general rule is subject to several exceptions. For example, transitory activities of employees are covered if they are providing some service to the employer, *i.e.*, service to the employer exception. *See Standard Gravure Corp. v. Grabhorn*, Ky.App., 702 S.W.2d 49 (1985); *Spurgeon v. Blue Diamond Coal Co.*, Ky., 469 S.W.2d 550 (1971); *Ratliff v. Epling*, Ky., 401 S.W.2d 43 (1966); *Palmer v. Main*, 209 Ky. 226, 272 S.W. 736 (1925).

Thus, work-related travel has come to mean travel which is for the convenience of the employer as opposed to travel for the convenience of the employee. *See Brown v. Owsley*, Ky.App., 564 S.W.2d 843 (1978) (coworkers who carpool without the knowledge or acquiescence of the employer are not providing a service to the employer); *Howard D. Sturgill & Sons v. Fairchild*, Ky., 647 S.W.2d 796 (1983) (a worker going to his employer's home to pick up his paycheck was not providing a service to the employer as there was no inducement by the employer for the worker to do so); *Farris v. Huston Barger Masonry, Inc.*, Ky., 780 S.W.2d 611 (1989) (since the employer had knowledge of, supported the practice of, and benefitted from its employees carpooling, and as the coworkers were running an errand and, thus, providing a service for the employer during the time in question, their injuries were work-related); *Applegate v. Hord*, Ky., 373 S.W.2d 430 (1963) (a worker who was permitted to frequently take the employer's truck home overnight in order to avoid the extra time and distance that would otherwise have been required in reporting to work the next day was not providing a service or benefit to the employer as the evidence reflected that the worker had specifically requested to take the truck home over the weekend in question in order to employ it for personal use, and there was no agreement between the employer and the worker that the employer would furnish the worker's transportation); *Hall v. Spurlock*, Ky., 310 S.W.2d 259 (1957) (a worker who lived on site during the week, but went home on weekends, was considered to be injured while performing a service for the employer as his duties included buying supplies for the crew while he was "in town," and as the injury occurred while he was attempting to take supplies back to his home to store until he returned to the mill site on Monday morning); *State Highway Comm'n v. Saylor*, 252 Ky. 743, 68 S.W.2d 26 (1933) (notwithstanding the fact that the employer was not obliged to furnish the worker transportation and that the pay of the worker started only when he began his work at the actual job site, the practice of the employer to convey its employees to the job site was clearly in the interest of the employer as it enabled the workers to begin work sooner without being hindered by the distances between the job sites and their residences; hence, there was an implied contract that the employer would transport this worker and that such would be considered part of the employment contract); *Turner Day & Woolworth Handle Co. v. Pennington*, 250 Ky. 433, 63 S.W.2d 490 (1933) (a worker who lived on site during the week, but went home on the weekends with the employer's "blessing" was regarded to be in the employer's service at the time of his injury on the way home as the employer agreed to pay his transportation costs as an inducement for him to remain so employed and as the employer frequently sent messages by the worker to its home office which was located in the city of the worker's residence, although he was not carrying a message on the date in question); and *Baskin v. Community Towel Service*, Ky., 466 S.W.2d 456 (1971), and *Heffren v. American Medicinal Spirits Corporation*, 272 Ky. 588, 114 S.W.2d 1115 (1938) (when a worker with a fixed time and

place of employment "clocks out" and leaves for lunch, he is providing no service to the employer during that time).

 Therefore, based on our interpretation of the applicable case law as summarized above, as well as the facts presented in the case at bar, it appears that there was substantial evidence to support a conclusion that Rogers' use of the company truck was of benefit to the company. The employer's purpose in providing such a vehicle to Rogers was to allow him to better perform the requirements and completion of his duties. Included within such objective was the premise that use of the company truck as transportation between Rogers' home and the job site would allow Rogers to begin his actual duties earlier, and to remain productive longer, by avoiding a stop at the company's business office in Louisville. Thus, although the use of such a conveyance was a convenience for Rogers, it was primarily of benefit to the employer. Hence, as it can be concluded that Rogers was performing a service to the employer at the time of his death, it can be determined that his death was work-related under the service to the employer exception to the going and coming rule.

In view of the foregoing, we need not specifically address the implied contract philosophy which may expand the scope of employment, or reach the question of whether we adopt the theories that an employer's deliberate and substantial payment for the expense of travel, the employer's issuance of a company vehicle, or the employer's furnishing of transportation in a conveyance, makes the journey held to be in the course of employment. *See Larson's Workers' Compensation Law,* § 16.30, § 16.31, § 17.00, *et seq.* (1997). Nor do we find that the evidence compelled the conclusion that there was a substantial deviation from the course and scope of the employment, and there is no such specific allegation herein.

Therefore, regardless of the fact that the ALJ may have applied an unrecognized theory in reaching his conclusion, since there was substantial evidence that the use of the company vehicle acted as a direct benefit to the employer as being in furtherance of the employer's business, there was substantial evi-

dence to support the conclusion that Rogers' death occurred in and during the course and scope of his employment. Said otherwise, based on these particular facts, the service to the employer exception to the going and coming rule applies, and Rogers' widow is entitled to benefits.

Accordingly, the decisions of the Court of Appeals and the Board are hereby affirmed.

All concur.